UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      *Petitioner*,<br><br>     v.<br><br>CHINA TELECOM (AMERICAS)<br>CORPORATION,<br><br>      *Respondent*. | Misc. No. |

**UNITED STATES' PETITION TO INITIATE A DETERMINATION THAT CERTAIN FISA SURVEILLANCE WAS LAWFULLY AUTHORIZED AND CONDUCTED**

Pursuant to 28 U.S.C. § 1345 and 50 U.S.C. § 1806(f), the United States hereby invokes this Court's jurisdiction and petitions this Court to determine the legality of electronic surveillance authorized under the Foreign Intelligence Surveillance Act ("FISA") and adopt the schedule proposed below for that determination. The legality of that surveillance is at issue because the Government has notified China Telecom (Americas) Corporation ("CTAC") that it intends to use FISA information against CTAC in the course of a proceeding before the Federal Communications Commission ("FCC"), and CTAC has requested access to the FISA information and related materials in the FCC's possession, in part to determine whether there are grounds to seek suppression of that information. Where, as here, an "aggrieved person" under FISA has sought to "obtain" FISA material, "the United States district court in the same district as the [FCC] shall … determine whether the surveillance of the aggrieved person was lawfully authorized and conducted" according to the procedures carefully designed by Congress to protect such information from disclosure—so long as the Attorney General

files an affidavit indicating that "disclosure or an adversary hearing would harm the national security of the United States." 50 U.S.C. § 1806(f); *see also ACLU Found. of S. California v. Barr*, 952 F.2d 457, 462 (D.C. Cir. 1991) (explaining same). Because the Attorney General intends to file such an affidavit, the United States petitions this Court to adopt the schedule proposed below to determine whether the electronic surveillance at issue was lawfully authorized and conducted.

I.  **Background**

In 2007, the FCC authorized CTAC, pursuant to section 214 of the Communications Act of 1934, to provide telecommunications services domestically and between the United States and foreign countries as a licensed international common carrier. *See* 47 U.S.C. § 214. Citing growing national security concerns with CTAC's continued access to U.S. telecommunications infrastructure, and CTAC's failure to adhere to the conditions of its 214 authorizations, various Executive Branch agencies[1] recommended on April 9, 2020, that the FCC revoke CTAC's 214 authorizations based on their determination that "'public convenience and necessity'" no longer require CTAC's common carrier services. *In the Matter of China Telecom (Americas) Corp.*, FCC File Nos. ITC-214-20010613-00346; ITC-214-20020716-00371; ITC-T/C-20070725-00285, "Executive Branch Recommendation to the [FCC] to Revoke and Terminate [CTAC's] International Section 214 Common Carrier Authorizations," at 56 (filed Apr. 9, 2020) (hereinafter, "Recommendation") (quoting 47 U.S.C.

---

[1] Those agencies consisted of the U.S. Department of Justice ("DoJ"), the U.S. Department of Homeland Security, the U.S. Department of Defense, the U.S. Department of State, the U.S. Department of Commerce, and the U.S. Trade Representative (hereinafter, "the agencies"). Since the time of the events described herein, the President issued Executive Order on Establishing the Committee for the Assessment of Foreign Participation in the United States Telecommunications Services Sector, EO 13913 (Apr. 4, 2020), which formalizes the membership and role of Executive Branch agencies in assisting the FCC in its public interest review of national security and law enforcement concerns that may be raised by foreign participation in the U.S. telecommunications services sector.

§ 214).[2] In support of the Recommendation, the agencies provided the FCC with several exhibits, including exhibits containing classified FISA information. On the same day, DoJ notified CTAC that it "intend[ed] to use or disclose" in the FCC's review of the Recommendation "information obtained or derived from electronic surveillance conducted pursuant to [FISA]." "Notice by [DOJ] of Intent to Use [FISA] Information" (filed Apr. 9, 2020).[3]

Thereafter, on April 24, 2020, the FCC issued an order, directing CTAC to show cause why the FCC "should not initiate a proceeding to revoke" CTAC's 214 authorizations, in light of, *inter alia*, the agencies' view that CTAC's continued access to U.S. telecommunications infrastructure poses "substantial and unacceptable national security and law enforcement risks." "Order to Show Cause," at 1 (filed Apr. 24, 2020). CTAC responded to the Show Cause Order on the merits. *See* "China Telecom Response to Show Cause Order" (filed June 8, 2020). Separately, CTAC requested access to the classified information in support of the Recommendation and "any and all FISA-related, obtained, or derived information related to CTAC in the [FCC]'s possession, including":

  i. "any application for FISA surveillance";
 ii. "any [Foreign Intelligence Surveillance Court] order";
iii. "any Attorney General certification or other authorization";
 iv. "any communications regarding the apparent surveillance of CTA[C]";
  v. "any and all information, documents, and records obtained from that surveillance,"
 vi. "the length of time that the government has engaged in surveillance of CTA[C], and/or its agents";

---

[2] The entirety of the relevant FCC docket is available at http://licensing.fcc.gov/cgi-bin/ws.exe/prod/ib/forms/reports/related_filing.hts?f_key=-133273&f_number=ITCT/C200707 2500285 (last visited Nov. 18, 2020). Hereinafter, further citation to the docket and file numbers is omitted unless otherwise indicated.

[3] CTAC is thus an "aggrieved person" under 50 U.S.C. § 1806(k) (defining an "aggrieved person" for purposes of electronic surveillance as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance"). *See id.* § 1806(c) (requiring the Government to provide notice only when it intends to "use or disclose in any … proceeding" FISA-obtained or FISA-derived information "against an aggrieved person").

      vii.    "the identity of any individual who has been surveilled"; and

      viii.   "the methods of surveillance."

"China Telecom Request for FISA Information," at 2 (filed May 1, 2020). In a letter to the FCC on May 19, 2020, DoJ explained that "[t]he FCC is not authorized to disclose classified information to [CTAC]," and that CTAC had cited no legal authority authorizing or requiring the FCC to do so. "[Letter from] DoJ to [the] FCC re FISA Notice," at 2 (filed May 19, 2020). In that letter, DoJ also requested that CTAC be asked to clarify whether it was "purporting to seek suppression of the FISA material" in the FCC proceeding "based on the legality of the FISA collection." *Id.* (citing 50 U.S.C. §§ 1806(e), (f)). CTAC responded by clarifying that it was requesting access to the FISA materials allegedly to "preserv[e] [it]s fundamental due process rights" and "to determine whether there are grounds to seek suppression of those materials." "CTA[C] Response to DOJ Letter Re FISA Materials," at 2 (filed June 3, 2020).[4]

## II. Discussion

### A. This Court Has Exclusive Jurisdiction To Determine Whether The FISA Surveillance Of CTAC Was Lawfully Authorized And Conducted.

As a "proceeding[] commenced by the United States," this Court possesses subject matter jurisdiction over this petition. 28 U.S.C. § 1345. Indeed, "Congress … anticipated that issues regarding the legality of FISA-authorized surveillance would arise in civil proceedings," and so, where such information is used against aggrieved persons in certain proceedings, "it empowered federal district courts to resolve those issues" according to carefully proscribed procedures set forth in § 1806(f) of FISA. *ACLU*, 952 F.2d at 470. That provision, entitled, "[i]n camera and ex parte review

---

[4] CTAC has also submitted to DoJ a Freedom of Information Act ("FOIA") request for some of the same materials. *See id.*

by district court," resides in a section of the FISA governing the use of information upon notice to aggrieved persons, *see* § 1806, and provides in pertinent part:

> [W]henever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States … before any court or other authority of the United States … to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this chapter, … the United States district court in the same district as the authority, shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted.  In making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

50 U.S.C. § 1806(f).

As the D.C. Circuit has explained, § 1806(f) was "designed to prevent disclosure of information relating to FISA surveillance in adversary proceedings." *ACLU*, 952 F.2d at 469 (quoting § 1806(f)).  And "Congress was adamant in enacting FISA that the 'carefully drawn procedures' of [§ 1806(f)] [we]re not to be 'bypassed by the inventive litigant using a new statute, rule or judicial construction.'" *United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982) (quoting H. Rep. No. 95-1283, 95th Cong., 2d Sess. 91 (1978)).  Congress meant to ensure that aggrieved persons against whom FISA evidence is used, whether before a court "or other authority of the United States," such as the FCC, could not, for instance, seek to obtain FISA material under a discovery rule or statute other than FISA that does not provide for the district court's *in camera*, *ex parte* review.  Thus, where, as here, the Government has provided notice that it intends to use such evidence, "[§] 1806(f) may … be invoked by the Attorney General when, in an action before any federal or state 'court or other authority,' an 'aggrieved person,' pursuant to a statute or rule, moves to 'discover or obtain' information relating to

5

the FISA Court's authorization of the surveillance or evidence derived from the government's investigation." *ACLU*, 952 F.2d at 470 (quoting § 1806(f)).

Most instances in which aggrieved persons seek discovery in order to challenge the use of FISA information against them arise in criminal proceedings that are already in district court, such that there is not usually a need to initiate a separate matter. But where, as here, a request by an aggrieved person to obtain FISA material arises in a forum other than federal district court—including civil proceedings—the United States invokes § 1806(f) to ensure that it is a district court, as contemplated in FISA, that determines the lawfulness of FISA surveillance according to the procedures set forth in § 1806(f) in order to resolve any challenge to the Government's use of the FISA evidence at issue. *See, e.g., United States v. Hamide*, 914 F.2d 1147, 1149 (9th Cir. 1990) (explaining that after plaintiffs in deportation proceedings had moved "to discover electronic surveillance and to suppress the use of that information on the ground that the electronic surveillances at issue were unlawful," "the government filed in the district court a Petition of the United States for Judicial Determination of Legality of Certain Electronic Surveillance claiming authorization under § 1806(f)") (internal quotation marks omitted); *United States v. Belfield*, 692 F.2d 141, 143–44 (D.C. Cir. 1982) (explaining that after appellants requested disclosure of electronic surveillance in D.C. Superior Court, the Government provided notice that they were aggrieved persons under FISA and filed a petition in the U.S. District Court for the District of Columbia for a judicial determination of the legality of the surveillance, as authorized in 50 U.S.C. § 1806(f)); *United States v. Hasan*, No. W-12MC195, 2012 WL 12883086, at *2 (W.D. Tex. Aug. 14, 2012), *aff'd*, 535 F. App'x 378 (5th Cir. 2013) ("Hasan's discovery request and motion to suppress were subsequently transferred by the military judge to this Court for adjudication in accordance with 50 U.S.C. § 1806(f).").

Once the Government invokes the 1806(f) procedures, a district court's review is confined to determining whether the FISA surveillance underlying the evidence put at issue in the proceeding was

6

"lawfully authorized and conducted," 50 U.S.C. § 1806(f), and that determination is made *in camera* and *ex parte*, *see Belfield*, 692 F.2d at 147 ("The language of section 1806(f) clearly anticipates that an *ex parte, in camera* determination is to be the rule."). Indeed, in making this determination, a district court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance *only* where such disclosure is *necessary* to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f) (emphasis added); *see also Belfield*, 692 F.2d at 147 ("Disclosure and an adversary hearing are the exception, occurring *only* when necessary."). Courts have uniformly determined that FISA surveillance was lawfully authorized and conducted based solely upon their *ex parte* review of the Government's *in camera* submissions and without disclosing any of the FISA materials. *See, e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010) (upholding district court's determination that "disclosure and an adversary hearing were unnecessary because its *in camera, ex parte* review permitted it to assess the legality of the challenged surveillance and the requirements of due process did not counsel otherwise"); *United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000) ("[B]ecause the documents submitted by the government were sufficient for the district court and this Court to determine the legality of the surveillance, we also deny the Appellants' request for disclosure of the FISA materials."); *Belfield*, 692 F.2d at 147 ("[T]he district court's decision to pass upon the legality of the surveillance based upon an *ex parte* examination of an *in camera* Exhibit was in keeping with the procedures contemplated by Congress when it enacted FISA."); *United States v. Aziz*, 228 F. Supp. 3d 363, 370 (M.D. Pa. 2017) ("Our inspection reveals no evidence or indication of irregularity, inconsistency, or insufficiency which might warrant disclosure to defense counsel of any portion of the FISA materials. The court is fully satisfied that it is able to make the requisite legal determinations on the basis of its *in camera* and *ex parte* review. Disclosure is unnecessary under §§ 1806(f) and

1825(g).") (internal citations omitted); *United States v. Hamide,* Misc. No. 22789 (C.D. Cal. Feb. 28, 1989) (same).[5]

CTAC's request before the FCC for any and all FISA-related, -obtained, or -derived information related to CTAC falls squarely within the terms of § 1806. It is (1) a "request" (2) by an "aggrieved person" who has received notice of the Government's intent to use FISA evidence (3) before an "authority of the United States" (4) for FISA information and related materials. 50 U.S.C. § 1806(f).[6] And where, as here, the Attorney General intends to file the requisite 1806(f) declaration, averring that disclosure of, or an adversary hearing with regard to, the requested FISA material would harm U.S. national security, this Court has sole jurisdiction to determine the legality of the FISA surveillance at issue, and resolve any challenge to the Government's use of the FISA evidence at issue, according to the *in camera* and *ex parte* procedures set forth in § 1806(f). *See ACLU*, 952 F.2d at 462 ("Federal district courts 'shall' conduct *ex parte, in camera* reviews to determine whether FISA surveillance, undertaken pursuant to an order of the FISA Court, was 'lawfully authorized and conducted' whenever the issue arises in a proceeding and the Attorney General, in an affidavit, represents that disclosure or an adversary hearing would harm the national security interests of the United States.") (quoting § 1806(f)); *United States v. Ott*, 26 M.J. 542, 545 (A.F.C.M.R. 1988) ("[FISA]

---

[5] In the only instance in which a district court has ordered the Government to disclose FISA materials submitted in support of its FISA application, the Government appealed, and the Seventh Circuit held that disclosure was improper and determined that the FISA surveillance at issue was legal without disclosing the requested FISA materials. *See United States v. Daoud*, 755 F.3d 479, 485 (7th Cir.), *supplemented*, 761 F.3d 678 (7th Cir. 2014).

[6] As discussed above, the statutory requirements could also be satisfied here based on the Government's own decision to provide notice to CTAC, even absent CTAC's request for FISA material to determine whether there are grounds to seek suppression of that material. *See* § 1806(f) (providing for the district court's review "[w]henever a court or other authority is notified pursuant to [the FISA notice provisions]"); H. Rep. No. 95-1283, 95th Cong., 2d Sess. 91 n.46 (1978)) ("It should be emphasized that notification by the Government triggers the special court procedures whether or not the defense has filed a suppression or discovery motion.").

clearly places the jurisdiction for resolution of discovery and suppression issues regarding evidence obtained pursuant to th[e] act exclusively in the Federal District Court 'if the Attorney General files an affidavit under oath that the disclosure or an adversary hearing would harm the national security of the United States.'") (quoting § 1806(f)); *see also Belfield*, 692 F.2d at 147 ("The language of section 1806(f) clearly anticipates that an *ex parte, in camera* determination is to be the rule.").

### B. Proposed Schedule To Determine The Lawfulness Of The FISA Surveillance At Issue.

The Government requests that the Court enter an order specifying the following schedule to determine the lawfulness of the FISA surveillance of CTAC:

- The Government shall file within 21 days of today or within seven days from the date of the issuance of a scheduling order, whichever is longer, *in camera* and *ex parte*, the Attorney General's 1806(f) declaration, along with any supporting materials necessary for the Court to determine whether the FISA surveillance of CTAC that the Government put at issue in the FCC proceedings was lawfully authorized and conducted. The Government will also file on the public docket an unclassified brief and any other unclassified materials as appropriate;

- Should the Court wish to receive a response from CTAC to the Government's unclassified filings, CTAC shall file a response, including to challenge on any grounds the legality of the FISA surveillance of CTAC at issue, 21 days after the Government's unclassified filings; and

- If CTAC files such a response, the Government may file a reply within 21 days after CTAC's response, with portions on the public docket or *in camera* and *ex parte* as appropriate.

To the extent the schedule suggested above is not feasible for the Court or for CTAC, the Government will meet and confer with CTAC regarding the schedule.

The Government notes that, in addition to the Attorney General's 1806(f) declaration, its initial submission for the Court's review will include, at a minimum: (1) the Government's Classified Response to CTAC's request for FISA material; (2) a classified declaration of a senior Federal Bureau of Investigation ("FBI") official, advising the Attorney General of the sensitivity of the classified information, sources, and methods contained in the FISA application(s) and orders at issue; (3) a classified declaration of an FBI Supervisory Special Agent or Special Agent detailing the FBI's compliance with the minimization procedures approved by the Attorney General and adopted by the Foreign Intelligence Surveillance Court ("FISC"), which were used in this investigation; (4) certified copies of the classified applications, orders, motions, and any related documents filed with the FISC; and (5) the Government's Unclassified Response to CTAC's request for FISA materials. The above-listed documents are necessary for the Court to determine whether the electronic surveillance at issue was lawfully authorized and conducted in order to resolve any challenges to the Government's use of the FISA evidence in the FCC proceedings. *See* § 1806(f) (directing district courts to "review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted").[7]

---

[7] The Government has filed, and district courts have considered, similar materials in determining the legality of FISA surveillance in similar circumstances. *See, e.g.,* Petition of the United States for a Determination of the Legality of Electronic Surveillance and Physical Searches Conducted Under The Foreign Intelligence Surveillance Act at 7-8, *United States v. Millay*, No. 13-005 (D. Alaska Jan. 17, 2013) (listing the same materials to be submitted by the Government for the district court's review); *Hasan*, 2012 WL 12883086, at *2 (noting that court had reviewed, *inter alia*, "the Government's response [to the defendant's motions to compel and suppress] and the attachments thereto, including applications, orders, and related materials").

## **CONCLUSION**

Based on the foregoing, the Government petitions this Court to adopt the schedule proposed above to determine whether the FISA surveillance at issue was lawfully authorized and conducted and resolve any effort by CTAC to challenge the use of the FISA evidence against it in the FCC proceeding.

Dated:  November 23, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

DIANE KELLEHER
Assistant Branch Director, Federal Programs Branch

 */s/ Emily Newton*
EMILY SUE NEWTON (Va. Bar No. 80745)
Senior Trial Counsel
MICHAEL H. BAER (**N.Y. 5384300**)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-8356
Facsimile: (202) 616-8470
emily.s.newton@usdoj.gov

*Counsel for Petitioner*